1

2

3            IN THE UNITED STATES DISTRICT COURT

4          FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6    GARY ALAN KITTRELL,                    Case No.  25-cv-02432-MMC

7              Plaintiff,
                                            **ORDER GRANTING DEFENDANT'S**
8         v.                                **MOTION TO COMPEL ARBITRATION**

9    USA DEBUSK LLC,

10             Defendant.

11

12        Before the Court is defendant USA Debusk LLC's ("USA Debusk") Motion to

13   Compel Arbitration, filed March 21, 2025.  Plaintiff Gary Alan Kittrell ("Kittrell") has filed

14   opposition, to which USA Debusk has replied.  Having read and considered the papers

15   filed in support of and in opposition to the motion, the Court rules as follows.[1]

16                          **BACKGROUND**

17        In his Complaint, filed February 11, 2025, Kittrell alleges he has been employed by

18   USA Debusk, from October 2019 to the present, as a "truck driver."  (See Compl. ¶ 4.)[2]

19   According to Kittrell, he and "similarly situated employees" have not been paid "for all

20   hours worked at the legal minimum wage" (see Compl. ¶¶ 13, 16), have not been paid

21   "wages for overtime hours at the overtime rate of pay" or, alternatively, "at the proper

22   overtime rate of pay" (see Compl. ¶ 18), have not received all required "meal periods"

23   and "rest periods" or the "premium wages" due for a missed meal or rest period (see

24   Compl. ¶¶ 27, 33), have not been provided with "sick pay wages" (see Compl. ¶ 39), and

25   _____

26        [1] By order filed April 17, 2025, the Court took the matter under submission.

27        [2] In a declaration submitted in opposition to the instant motion, Kittrell clarifies that
     he started working for USA Debusk in January 2019, that he resigned in October 2019,
28   and that he was rehired in June 2020.  (See Kittrell Decl. ¶ 2.)

United States District Court
Northern District of California

1    have not received "accurate wage statements" (see Compl. ¶ 44). Based on these

2    allegations, Kittrell asserts seven Causes of Action arising under California law, which

3    claims he seeks to bring on his own behalf and on behalf of all persons employed by

4    USA Debusk as "non-exempt employees." (See Compl. ¶ 46.)

5                                    **DISCUSSION**

6         USA Debusk argues that, under the terms of an "Arbitration Agreement" (see

7    Pehle Decl. Ex. A), Kittrell's individual claims are subject to arbitration and the claims he

8    has asserted on behalf of a putative class must be dismissed. The parties dispute

9    whether the Arbitration Agreement is enforceable under the Federal Arbitration Act

10   ("FAA"), or, alternatively, under the California Arbitration Act ("CAA").

11        The Court first considers whether Kittrell's claims are subject to arbitration under

12   the FAA.

13   **A. FAA**

14        "The FAA's coverage provision, § 2, provides that '[a] written provision in . . . a

15   contract evidencing a transaction involving commerce to settle by arbitration a

16   controversy thereafter arising out of such contract or transaction . . . shall be valid,

17   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

18   revocation of any contract'." Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111-12

19   (2001) (quoting 9 U.S.C. § 2). A district court's role under the FAA is to determine

20   "whether a valid agreement to arbitrate exists," and, if so, "whether the agreement

21   encompasses the dispute at issue." See Chiron Corp. v. Ortho Diagnostic Systems, Inc.,

22   207 F.3d 1126, 1130 (9th Cir. 2000).

23        Here, USA Debusk offers evidence that Kittrell, on June 9, 2020, signed the

24   Arbitration Agreement, as did Jerrod Pehle ("Pehle"), USA Debusk's "Terminal Manager"

25   at its facility in Stockton, California. (See Pehle Decl. ¶¶ 7-8, Ex. A.) Although Kittrell, in

26   his declaration, states he was told to "come in to sign the new hire paperwork" and

27   "do[es] not recall signing any arbitration agreement" (see Kittrell Decl. ¶¶ 3, 5), he does

28   not deny that he signed said Agreement. Under such circumstances, an agreement to

United States District Court
Northern District of California

1  arbitration exists.  See Iyere v. Wise Auto Group, 87 Cal. App. 5th 747, 756 (2023)

2  (holding, where employer "submitted copies of the [arbitration] agreement bearing

3  plaintiffs' apparent handwritten signatures" and "no plaintiff declared that he had *not*

4  signed the agreement," plaintiffs' statements that they did "not recall ever reading or

5  signing" the agreement was insufficient to create "a factual dispute as to whether

6  plaintiffs signed the agreement") (emphasis in original).

7        Further, as claims subject to the provisions of the Arbitration Agreement include

8  "all claims . . . Employee may have against the Company . . . relating to, resulting from, or

9  in any way arising out of Employee's employment relationship with Company . . . to the

10  extent permitted by law" (see Pehle Decl. Ex. A ¶ A),[3] the Arbitration Agreement

11  encompasses the claims asserted in the instant Complaint, as each of those claims

12  arises out of Kittrell's employment with USA Debusk.

13        Under § 2 of the FAA, arbitration agreements in "contract[s] evidencing a

14  transaction involving commerce" are generally enforceable, see 9 U.S.C. § 2, which

15  contracts "include employment contracts," see Rogers v. Royal Caribbean Cruise Line,

16  547 F.3d 1148, 1154 (2008).  Under § 1 of the FAA, however, some types of employment

17  contracts, namely "contracts of employment of seamen, railroad employees, or any other

18  class of workers engaged in foreign or interstate commerce," see 9 U.S.C. § 1, are

19  "exempt[ed] from [§ 2's] ambit," see Southwest Airlines Co. v. Saxon, 596 U.S. 450, 453

20  (2022). Here, Kittrell, relying on § 1 of the FAA, argues his contract of employment is

21  exempt from coverage under § 2 of the FAA

22        The term "any other class of workers engaged in foreign or interstate commerce"

23  means "transportation workers," see Circuit City Stores, 532 U.S. at 119-121, and

24  "transportation workers" are defined as those that "play a direct and necessary role in the

25  free flow of goods across borders," or, "[p]ut another way," are "actively engaged in

26

27        _____
          [3] The introductory sentence of the Arbitration Agreement defines Kittrell as

28  "Employee" and USA Debusk as "Company."  (See id.)

3

1    transportation of those goods across borders via the channels of foreign or interstate

2    commerce," see Saxon, 596 U.S. at 458 (internal quotations and citation omitted).  Such

3    "transportation workers," however, do not necessarily have to "cross state lines."  See

4    Rittmann v. Amazon.com, Inc., 971 F.3d 904, 915 (9th Cir. 2020).  For example, a "class

5    of workers that loads or unloads cargo on or off airplanes bound for a different State or

6    country is 'engaged in foreign or interstate commerce'," see Saxon, 596 U.S. at 459

7    (quoting 9 U.S.C. § 1), as are workers that "transport packages through to the conclusion

8    of their journeys in interstate and foreign commerce," even though such workers may

9    transport goods "wholly within a state," see Rittmann, 971 F.3d at 915-16.

10        To determine whether a plaintiff is a member of a "class of workers engaged in

11   foreign or interstate commerce," see 9 U.S.C. § 1, the first step is to determine "the

12   actual work that the members of the class, as a whole, typically carry out," see Saxon,

13   596 U.S. at 456.  Here, Kittrell, whose job title is "Pneumatic Vacuum Truck Operator"

14   (see Kittrell Decl. ¶ 2), works for USA DeBusk at its "terminal facility" in Stockton,

15   California (see Pehle Decl. ¶¶ 4-5), and is assigned to perform tasks at "oil refineries" in

16   California (see Kittrell Decl. ¶¶ 13-14).[4]  In his declaration, Kittrell states he moves

17   "catalyst material used in the oil refinement process" (see Kittrell Decl. ¶ 11), specifically,

18   that he transports catalyst arriving in California, from either abroad or another state, to an

19   oil refinery in California (see id. ¶¶ 12, 15), where, using a "Pneumatic Vacuum," he loads

20   the catalyst into a "silo" at the oil refinery (see id. ¶¶ 13, 15), and that he thereafter

21   transports the "spent catalyst" from the silo to other locations, including locations outside

22   of California (see id. ¶¶ 14, 17).  These activities are described in more detail below.

23        First, Kittrell states, "[s]hipping containers" arrive at "[USA Debusk's] facility from

24   the dock," that such containers hold "catalyst and other materials used in the oil

25

26        _____

27        [4] According to USA Debusk's Terminal Manager, USA Debusk provides "vacuum
     services," as well as other services, to "the downstream energy sector."  (See Pehle
     Decl. ¶ 3.)  The Court thus understands the oil refineries where Kittrell performs work to
28   be clients of USA Debusk.

1  production or similar industry," that such goods "originate[ ] from China and all over the

2  world," that he operates a "forklift to remove large canvas bags of catalyst and other

3  material from the shipping containers," that said bags are "loaded into [a] trailer" that is

4  "attached to his truck," that he drives the bags to oil refineries, and that he "load[s]" the

5  catalyst into silos at the refineries.  (See id. ¶ 15; see also id. at ¶ 13.)[5]

6          Second, Kittrell states that "catalyst materials" alternatively arrive by railcars at

7  "rail spurs" located at the oil refineries where he works, that the "majority" of such catalyst

8  is supplied by Equilibrium Catalyst, Inc. ("ECI"), that it is "common knowledge" in "the

9  industry" in which Kittrell works that ECI is located in Texas, that he unloads such catalyst

10  from the railcars into the trailer attached to his truck, and that he then drives the catalyst

11  to silos at the refineries.  (See id. ¶¶ 12-13.)

12          Third, Kittrell states that, once the catalyst is used, he "load[s]" the "spent catalyst

13  into the trailer" and "transport[s]" it to "outside locations," which locations are the "Nevada

14  Cement Company in Fernley, Nevada," the "Clean Harbors Landfill Facility in

15  Buttonwillow, California, or "a local railcar to be taken to a final destination out of state,

16  typically ECI in Texas."  (See id. ¶¶ 14, 16.)

17          Lastly, Kittrell states that there are "several other drivers at any given time

18  employed by [USA Debusk]" who are "performing similar duties to [Kittrell]," namely,

19  "loading and unloading catalyst and other materials and transporting them to and from

20  silos at oil refineries."  (See id. ¶ 18.)

21          USA Debusk has not offered evidence to contradict Kittrell's factual assertions

22  describing his work, nor evidence to contradict his statement that other truck drivers

23  employed by USA Debusk perform similar work, and, consequently, the Court finds

24

25          [5] Although USA Debusk objects to Kittrell's statement that the goods originate from
26  outside California, Kittrell has explained that his knowledge comes from "invoices" he
    receives as "part of [his] job."  (See id. ¶ 15.)  Further, as the goods arrive at a "dock"
27  (see id.), which the Court understands to be a reference to a waterside structure that
    receives ships for loading and unloading, a reasonable inference can be drawn that the
28  goods originated outside California.

1    Kittrell's factual assertions describe "the actual work that the members of the class, as a

2    whole, typically carry out." See Saxon, 596 U.S. at 456.

3         The next issue is whether the class of drivers in which Kittrell is a member "is

4    'engaged in foreign or interstate commerce'." See id. (quoting 9 U.S.C. § 1).  The Court

5    finds the subject class of drivers is so engaged.  Although not all of the work described by

6    Kittrell constitutes the transportation of goods in interstate or foreign commerce, a

7    significant amount of the work does.  In particular, when the class of drivers transports

8    catalyst arriving by shipping containers from outside California to the oil refineries where

9    it will be used in California, the class is "part of a continuous interstate [or foreign]

10   transportation." See Rittmann, 971 F.3d at 916.  Further, when the class transports spent

11   catalyst from oil refineries in California to intended recipients located outside of California,

12   the class is, again, engaged in interstate commerce.

13        Accordingly, the Court finds Kittrell has made a sufficient showing that he is a

14   transportation worker and, consequently, is exempt.

15   **B. CAA**

16        The Court next determines whether, alternatively, USA Debusk is entitled to an

17   order under the CAA compelling arbitration and dismissing the putative class claims.

18        Under the CAA, arbitration agreements are "valid, enforceable and irrevocable,

19   save upon such grounds as exist for the revocation of any contract." See Cal. Code Civ.

20   Proc. § 1281.  "A party seeking to compel arbitration of a dispute bears the burden of

21   proving the existence of an arbitration agreement, and the party opposing arbitration

22   bears the burden of proving any defense." Jenks v. DLA Piper Rudnick Gray Cary US

23   LLC, 243 Cal. App. 4th 1, 8 (2015) (internal quotation and citation omitted).

24        Here, as discussed above, an arbitration agreement exists and covers the claims

25   asserted in the Complaint.  The Court thus turns to Kittrell's arguments that the Arbitration

26   Agreement is not enforceable under the CAA, namely, his arguments that mandatory

27   arbitration agreements are not enforceable, that wage claims categorically are not subject

28   to arbitration, and that the Arbitration Agreement is unconscionable, as well as his

United States District Court
Northern District of California

6

1 argument that a class action waiver contained in the Arbitration Agreement is invalid.[6]

2     **1. Enforceability of Mandatory Arbitration Agreements**

3       Under § 432.6 of the California Labor Code, "[a] person shall not, as a condition of

4 employment, or the receipt of any employment-related benefit, require any applicant for

5 employment or any employee to waive any right, forum, or procedure for a violation of

6 [the Labor Code], including the right to file and pursue a civil action or complaint." See

7 Cal. Lab. Code § 432.6(a). A person who violates § 432.6(a) is "guilty of a

8 misdemeanor," see Cal. Lab. Code § 433, and can be held civilly liable under the

9 California Fair Employment and Housing Act, see Cal. Gov't Code § 12953.

10       The parties disagree as to whether an arbitration agreement that falls within the

11 scope of § 432.6 is unenforceable.[7] The Court finds the statute does not address

12 enforceability, and adopts the following analysis set forth in Bahamonde v. Amazon.com

13 Services LLC, 2025 WL 2021801 (N.D. Cal. July 18, 2025):

14     California Labor Code § 432.6 prohibits an employer from requiring "as a
    condition of employment, continued employment, or the receipt of any

15     employment-related benefit," that a person "waive any right, forum, or
    procedure for a violation of any provision of the California Fair Employment

16     and Housing Act" or the Labor Code. But § 432.6 "does not affect the
    enforceability of the resultant agreement to arbitrate." Chamber of Com. of

17     the United States of Am. v. Bonta, 62 F.4th 473, 480 (9th Cir. 2023). In
    Bonta, California acknowledged and the Ninth Circuit reiterated that the

18     statute does not on its own make arbitration agreements unenforceable;
    instead, it criminalizes and subjects employers to civil penalties for forcing

19     employees to enter certain arbitration agreements. Id.; see also id. at 487

20

21       [6] The CAA, unlike the FAA, does not contain an exemption for transportation
workers' contracts of employment. See Armendariz v. Foundation Health Psychcare

22 Services, Inc., 24 Cal. 4th 83, 98 (2000) (holding CAA "contains no exemption for
employment contracts").

23       [7] A triable issue exists as to whether Kittrell was required, as a condition of

24 employment, to enter into the Arbitration Agreement. Kittrell, in his declaration, states he
was told by Pehle, his supervisor, that he "needed to sign" the Arbitration Agreement "if

25 [he] wanted to start working" (see Kittrell Decl. ¶ 4), whereas Pehle, in his declaration,
states that the Arbitration Agreement is "optional," that he "explained" the Agreement to

26 Kittrell and "allowed him the time to read and consider the document and ask any
questions," and that Kittrell was "encouraged to take the time to consult with an attorney"

27 but "decided to accept the Arbitration Agreement" (see Pehle Decl. ¶¶ 9-10). For
purposes of the instant motion only, the Court assumes Kittrell was required, as a

28 condition of employment, to enter into the Arbitration Agreement.

("California argues that because [§ 432.6] regulates the conduct of
employers before an arbitration agreement is formed, rather than affecting
the validity or enforceability of the executed arbitration agreement itself, it
does not conflict with the FAA.") (emphasis added).  Accordingly, § 432.6
does not preclude enforcement of the arbitration agreement.

See Bahamonde, 2025 WL 2021801, at *6 (alteration in original) (holding arbitration

agreement subject to CAA not enforceable by reason of § 432.6).

Accordingly, the Court finds § 432.6 does not render the Arbitration Agreement

unenforceable.

### 2.  Wage Claims Not Subject to Arbitration

Kittrell, citing § 229 of the California Labor Code, contends none of his claims can

be compelled to arbitration.

Under § 229, "[a]ctions to enforce the provisions of this article for the collection of

due and unpaid wages claimed by an individual may be maintained without regard to the

existence of any private agreement to arbitrate," see Cal. Lab. Code § 229, "this article"

being a reference to "sections 200 through 244" of the Labor Code, see Lane v. Francis

Capital Mgmt. LLC, 224 Cal. App. 4th 676, 684 (2014).

Only three of Kittrell's seven Causes of Action are brought under the subject

article, specifically, the Third Cause of Action, asserting, under § 226.7, a failure to

provide meal periods, the Fourth Cause of Action, asserting, under § 226.7, a failure to

provide rest periods, and the Sixth Cause of Action, asserting, under § 226, a failure to

provide accurate itemized wage statements.  Under California law, none of those three

claims seek "the collection of due and unpaid wages."  See id. (holding § 229 is

inapplicable to claims alleging failure to provide meal or rest periods and claims alleging

failure to properly itemize wage statements; finding said claims are not "action[s] for the

'collection of due and unpaid wages'").[8]

---

[8] Although Kittrell argues Lane was overruled by Naranjo v. Spectrum Security
Services, Inc., 13 Cal. 5th 93 (2022), the Ninth Circuit has disagreed.  See Morales v.
United States Dist. Court, 2024 WL 3565262, at *3 (9th Cir. July 29, 2024) (finding
Naranjo "did not" overrule Lane).

United States District Court
Northern District of California

1    Accordingly, the Court finds § 229 is not applicable to any of Kittrell's claims.

2    **3. Unconscionability**

3    "Under California law, courts may refuse to enforce any contract found to have

4    been unconscionable at the time it was made, or may limit the application of any

5    unconscionable clause." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011)

6    (hereinafter, "Concepcion") (internal quotation and citation omitted).  "A finding of

7    unconscionability requires a procedural and a substantive element, the former focusing

8    on oppression or surprise due to unequal bargaining power, the latter on overly harsh or

9    one-sided results." Id. (internal quotation and citation omitted).

10    **a. Procedural Unconscionability**

11    Procedural unconscionability is present where "a party has no meaningful

12    opportunity to negotiate terms or the contract is presented on a take it or leave it basis."

13    See Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1246 (2011).

14    Here, although, as noted, a triable issue exists as to whether the Arbitration

15    Agreement was a condition of Kittrell's employment or was optional, see supra, n.7, the

16    Court assumes for purposes of the instant motion that the Arbitration Agreement was a

17    condition of Kittrell's employment.  In light of such assumption, the "procedural element of

18    an unconscionable contract" is established.  See Little v. Auto Stiegler, Inc., 29 Cal. 4th

19    1064, 1071 (2003) (holding "procedural element" established where employer had

20    "imposed on [employee] an adhesive arbitration agreement"; observing "few employees

21    are in a position to refuse a job because of an arbitration requirement").

22    **b. Substantive Unconscionability**

23    Kittrell asserts the Arbitration Agreement contains six unconscionable provisions,

24    which the Court considers, in turn.

25    **(1) Indefinite Duration**

26    The Arbitration Agreement provides that it "shall continue during the term of

27    employment and thereafter regarding any employment-related disputes."  (See Pehle

28    Decl. Ex. A ¶ H.)  Kittrell argues that, in light of such provision, the Arbitration Agreement

9

1    is unconscionable because it is "indefinite in duration."  (See Pl.'s Opp. at 12-13.)  In

2    support of such argument, Kittrell cites Cook v. University of Southern California, 102 Cal.

3    App. 5th 312 (2024), in which the California Court of Appeal found an arbitration

4    agreement providing said agreement "shall survive the termination of Employee's

5    employment" was unconscionable.  See id. at 325.

6        Contrary to Kittrell's argument, however, Cook cannot be interpreted as holding all

7    arbitration agreements between an employer and employee are unconscionable if they

8    survive termination of the employment.  Rather, in Cook, the agreement required the

9    employee to arbitrate any claim she might have against her employer, as well as against

10   multiple other entities and individuals associated with the employer, irrespective of

11   whether the claims against her employer or any other entities or individuals bore any

12   relationship to her employment.  See id. at 317.  As the trial court observed, in a decision

13   the Court of Appeal characterized as "well-reasoned," the agreement would apply "for the

14   rest of [the employee's] life."  See id. at 318.

15       Here, by contrast, the Arbitration Agreement, although potentially lasting for a

16   period of time following the termination of Kittrell's employment, cannot be characterized

17   as indefinite in duration, as its coverage is limited to issues relating to Kittrell's

18   employment, which would end on a given date.

19       Accordingly, the Arbitration Agreement is not substantively unconscionable under

20   a theory that it is of indefinite duration.

21                      **(2) Lack of Mutuality re: Claims Against Non-Employers**

22       The Arbitration Agreement requires "final and binding arbitration of all claims that

23   Company may have against Employee or that Employee may have against the Company

24   or against its officers, directors, partners, employees, agents, pension or benefit plans,

25   administrators, or fiduciaries, clients or any subsidiary or affiliated company or

26   corporation relating to, resulting from, or in any way arising out of Employee's

27   employment relationship with Company . . . to the extent permitted by law."  (See Pehle

28   Decl. Ex. A ¶ A.)

1    Kittrell challenges, for lack of mutuality, the requirement that he must submit to

2    arbitration any claim arising out of his employment against one of the identified

3    individuals or entities other than USA Debusk.

4    As with the argument made above, Kittrell relies on <u>Cook</u>, in which, as noted, the

5    arbitration agreement, without any end date, required the employee to submit to

6    arbitration any claim she may have against the employer and multiple other entities and

7    individuals associated with the employer, irrespective of whether those claims bore any

8    relationship to her employment.  Under those circumstances, <u>Cook</u> found unconscionable

9    a provision requiring the employee alone to submit to arbitration any claims she might

10   have against the numerous non-employer entities and individuals.  In particular, the Court

11   of Appeal stated, "[n]o explanation is offered as to why [the plaintiff] should be required to

12   give up the ability to ever bring claims in court against [an] employee [of the defendant]

13   that are unrelated to [the employer] or her employment there."  <u>See</u> <u>Cook</u>, 102 Cal. App.

14   5th at 327.

15   Although Kittrell asserts the holding in <u>Cook</u> applies where an arbitration

16   agreement is limited in scope to claims arising out the employment relationship, Kittrell

17   cites no authority for such proposition.  Indeed, the one court that has considered such

18   an argument has rejected it.  <u>See</u> <u>Johnston v. Sensei AG Holdings</u>, 2025 WL 703258, at

19   *7 (Cal. Ct. App. March 5, 2025) (finding holding in <u>Cook</u> inapplicable to agreement

20   limited to "employment-related claims"; explaining that, although it is "theoretically 'one-

21   sided' to require [the] plaintiff to arbitrate employment-related claims against [the]

22   defendant's officers, directors, and the like, while not specifically requiring them (as they

23   are not signatories) to arbitrate disputes relating to [the] plaintiff's employment, the

24   practical effect appears to be nonexistent").[9]  By contrast, courts that have applied the

25

26   ───────────────

27   [9] Although an unpublished opinion of the California Court of Appeal is not "precedential," a district court may consider it when determining California law.  <u>See</u> <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

28

United States District Court
Northern District of California

1   holding in <u>Cook</u> have, like <u>Cook</u>, involved an arbitration agreement that was of "indefinite"

2   duration and required only the employee to submit to arbitration "any" claims the

3   employee ever might have against a large number of non-signatories.  <u>See</u> <u>Sandler v.</u>

4   <u>Modernizing Medicine, Inc.</u>, 2024 WL 4469217, at *7-8 (S.D. Cal. October 9, 2024);

5   <u>Cocom v. ABM Aviation, Inc.</u>, 2024 WL 5701894, at *6-*9  (C.D. Cal. December 27,

6   2024); <u>Bahamonde</u>, 2025 WL 2021801, at *8.

7        Accordingly, the Court finds the Arbitration Agreement is not substantively

8   unconscionable under a theory of lack of mutuality.

9                   **(3)  Applicable Arbitration Rules**

10       The Arbitration Agreement states that, "[e]xcept as otherwise provided in this

11   Agreement, the arbitration will be conducted according to the then applicable arbitration

12   rules of AAA [American Arbitration Association] for the arbitration of employment

13   disputes[;] a copy of these rules can be found at <u>www.adr.org</u>."  (<u>See</u> Pehle Decl. Ex. A

14   ¶ C.)

15       Kittrell argues the term "the then applicable arbitration rules" renders the above-

16   quoted provision unconscionable, under the theory that an employee, at the time he

17   entered into the Arbitration Agreement, would not know what the rules would be if he

18   were to submit a claim in arbitration at some point in the future.

19       In support of his argument, Kittrell cites <u>Hasty v. American Automobile Ass'n</u>, 98

20   Cal. App. 5th 1041 (2023).  Although the Court of Appeals in the cited case did observe

21   that, given that the agreement at issue therein provided that the arbitration would be

22   conducted under the "rules of JAMS then in effect," an employee would not know in

23   advance the rules that would apply to "a dispute aris[ing] in the future," <u>see</u> <u>id.</u> at 1061,

24   the Court of Appeal made no finding that the provision was unconscionable, noting no

25   issue had been raised as to said provision.  Moreover, there is no dispute that AAA is

26   commonly designated as the entity by which the arbitration will be conducted nor is there

27   any dispute that AAA arbitrations will need to be conducted in accordance with AAA's

28   rules, which, on occasion, may be amended by AAA.  Indeed, the above-quoted term

United States District Court
Northern District of California

United States District Court
Northern District of California

1    challenged by Kittrell does no more than confirm what appears to be a long-standing,

2    standard provision in AAA's Rules.  See AAA Employment/Workplace Arbitration Rule R-

3    1(a) (providing "[t]hese Rules and any amendment to them shall apply in the form in

4    effect at the time the administrative requirements are met for a Demand for Arbitration . . .

5    received by the AAA");[10] see also Lucas v. Gund, Inc., 450 F. Supp. 2d 1125, 1132 (C.D.

6    Cal. 2006) (noting same rule applicable in 2006).

7         Additionally, Kittrell fails to explain why the provision he challenges is

8    unconscionable as lacking "mutuality," i.e., being "one-sided," an issue the Court of

9    Appeal in Hasty deemed the "paramount consideration in assessing substantive

10   unconscionability," see Hasty, 98 Cal. App. 5th at 1059 (internal quotation, citation, and

11   alteration omitted), as, at whatever time in the future a dispute involving Kittrell's

12   employment might arise, both parties, by clicking the hyperlink in the Arbitration

13   Agreement, would be aware of the rules then in effect.

14        Accordingly, the Arbitration Agreement is not substantively unconscionable by

15   reason of its inclusion of the term "the then applicable arbitration rules."

16                    **(4)  Limitations on Recovery of Attorney's Fees**

17        The Arbitration Agreement contains the following provision pertaining to awards of

18   attorney's fees:

19        Each party shall be responsible for its own attorney's fees.  However, if any
         party prevails on a statutory claim, which affords the prevailing party[ ]
20       attorney's fees, or if there is written agreement providing for fees, the
         arbitrator may award reasonable fees to the prevailing party.

21   (See Pehle Decl. Ex. A ¶ F.)

22        In his Complaint, Kittrell seeks, with respect to his minimum wage and overtime

23   claims, an award of attorney's fees under § 1194 of the Labor Code (see Compl., Prayer

24   for Relief, page 32), which statute contains "a one-way fee shifting provision, whose

25   purpose is to disincentivize violations of [the] minimum and overtime wage laws," see

26

27        _____

28        [10] The AAA Employment/Workplace Arbitration Rules can be found at
          https://www.adr.org/media/0vrpbnm0/2025_employment_arbitration_rules.pdf.

1  Gramajo v. Jose's Pizza on Sunset, Inc., 100 Cal. App. 5th 1094, 1101-02 (2024).  Kittrell

2  argues the above-quoted provision's use of the word "may" means the arbitrator has the

3  discretion to ignore § 1194 in the event Kittrell were to prevail on his minimum and

4  overtime wage claims.

5      "[A]n arbitration agreement may not limit statutorily imposed remedies such as . . .

6  attorney fees."  See Armendariz, 24 Cal. 4th at 103 (describing as "undisputed" the

7  principle that "an arbitration agreement may not limit statutorily imposed remedies such

8  as . . . attorney fees").  The Court does not, however, interpret the above-quoted

9  provision in the Arbitration Agreement in the manner proposed by Kittrell.

10      Under the "American Rule," each litigant "pays his own attorney's fees, win or

11  lose, unless a statute or contract provides otherwise."  See Hardt v. Reliance Standard

12  Life Ins. Co., 560 U.S. 242, 252-53 (2010).  The Court interprets the above-quoted

13  provision in the Arbitration Agreement as restating this "bedrock principle," see id., i.e.,

14  that the American Rule applies unless a statute or contract contains an attorney's fees

15  provision.

16      To the extent the Arbitration Agreement's use of the word "may" creates any

17  ambiguity, however,[11] the Court finds it proper to interpret the sentence in which it is

18  contained to mean that, if an applicable statute or contract contains an attorney's fees

19  provision, such provision applies rather than the American Rule.  See Pearson Dental

20  Supplies, Inc. v. Superior Court, 48 Cal. 4th 665, 682 (2010) (holding, "[w]hen an

21  arbitration provision is ambiguous, [courts] will interpret that provision, if reasonable, in a

22  manner that renders it lawful, both because of [California's] public policy in favor of

23  arbitration as a speedy and relatively inexpensive means of dispute resolution, and

24  because of the general principle that [courts] interpret a contractual provision in a manner

25  that renders it enforceable rather than void"); Patterson v. Superior Court, 70 Cal. App.

26

27      [11] The Court notes that the drafter of the second sentence could not have used the
    word "shall" in place of "may," as many statutes and contracts containing attorney's fees
28  provisions are not mandatory.

United States District Court
Northern District of California

5th 473, 490 (2021) (holding, in case where employee subject to arbitration agreement asserted FEHA claim, arbitration agreement was interpreted as "impliedly incorporat[ing] the FEHA asymmetric rule for awarding attorney's fees").

Accordingly, the Court finds the attorney's fees provision in the Arbitration Agreement is not unconscionable.

### (5) Limitations on Seeking Public Injunctions

The Arbitration Agreement provides arbitration "shall proceed solely on an individual basis" and that "[t]he arbitrator's authority to resolve and make written awards is limited to claims between [the employee] and [USA Debusk] alone."  (See Pehle Decl. Ex. A ¶ I.)  Kittrell contends such provisions unconscionably preclude him from seeking public injunctive relief.  In support of such argument, Kittrell relies on McGill v. Citibank, N.A., 2 Cal. 5th  945 (2017), in which the California Supreme Court held that an arbitration provision is "invalid and unenforceable under state law" where it precludes a party from seeking "public injunctive relief," see id. at 961, "i.e., injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," see id. at 951.

The Ninth Circuit has held, however, that the "McGill rule is not implicated" where a plaintiff does not seek public injunctive relief.  See Hodges v. Comcast Cable Communications, LLC, 21 F.4th 535, 538 (9th Cir. 2021) (holding, where plaintiff does not seek public injunctive relief, he cannot rely on "McGill rule" to avoid arbitration); see also id. at 540-41 (rejecting argument that "courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute").

Here, the Complaint describes the injunctive relief Kittrell seeks as an order enjoining USA Debusk "from engaging in the conduct alleged [in the Complaint] that is injurious to the general public."  (See Compl. ¶ 160.)  As set forth above, the "conduct alleged" in the Complaint consists of an employer's failure to pay employees for all hours worked, to pay all overtime owed, to provide all required meal and rest periods or to pay premium wages for any such missed period, to pay employees for all wages due when

United States District Court
Northern District of California

1   they take sick days off, and to provide accurate wage statements.  Injunctive relief to

2   remedy such alleged violations would not, as a matter of law, be "public injunctive relief."

3   See Hodges, 21 F.4th at 543 (explaining injunction to "prevent [an] employer" from

4   violating "wage and hour" laws under California law is "not 'public'" injunction; noting

5   "potential beneficiaries" of such injunction are employer's "current employees, not the

6   public at large").

7        Accordingly, Kittrell may not, in contending the Arbitration Agreement is

8   unconscionable, rely on the provision barring him from seeking public injunctive relief.

9              **(6)  Provision Barring PAGA Claims**

10       The Arbitration Agreement states that "claims brought in a purported

11  representative capacity on behalf of others" cannot be brought in arbitration.  (See Pehle

12  Decl. Ex. A ¶ I.)  Kittrell argues said provision is unconscionable as it precludes him from

13  bringing claims on behalf of other employees under the Private Attorney General Act

14  ("PAGA"), §§ 2698 - 2699.6 of the California Labor Code.[12]

15       Under California law, "an employee's right to bring a PAGA action is unwaivable,"

16  and, consequently, a provision in an arbitration agreement requiring an employee to

17  waive such right "is against public policy and may not be enforced."  See Iskanian v. CLS

18  Transportation Los Angeles LLC, 59 Cal. 4th 348, 383 (2014).  USA Debusk does not

19  dispute that the provision on which Kittrell relies bars him from seeking relief under PAGA

20  on behalf of other employees.

21       Accordingly, the Court finds the provision barring Kittrell from seeking relief under

22  PAGA on behalf of other employees is substantively unconscionable.

23  _____

24       [12] Kittrell does not allege a PAGA claim, nor has he asserted any desire to amend
    to allege one.  Under such circumstances, it could be argued that he should not be
25  allowed to rely on the Arbitration Agreement's prohibition against bringing PAGA claims,
    as he seeks to invalidate a contract "based on hypothetical issues that are not actually
26  presented in the parties' dispute."  See Hodges, 21 F.4th at 541.  The principle set forth
    in Hodges, however, has not been applied to an employee who does not allege a PAGA
27  claim.  See, e.g., Najarro v. Superior Court, 70 Cal. App. 5th 871, 882-83 (2021) (holding,
    in determining whether provision in arbitration agreement barring PAGA claims is
28  unconscionable, "[i]t is irrelevant that [the plaintiffs] have not brought a PAGA action").

United States District Court
Northern District of California

**(7)  Conclusion: Unconscionability**

As the Arbitration Agreement is, at least to some extent, procedurally unconscionable and contains one substantively unconscionable term, i.e., the prohibition against PAGA claims, the Court next addresses whether the substantively unconscionable term is severable.  See Concepcion, 563 U.S. at 339 (holding, "[u]nder California law," courts "may limit the application of any unconscionable clause") (internal quotation and citation omitted); Cal. Civ. Code § 1670.5 (providing where court finds "contract or any clause of the contract to have been unconscionable at the time it was made[,] the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause").

Severance of an unconscionable term is not appropriate where a court "would have to, in effect, reform the contract" in order to preserve the rest of the agreement or where the "central purpose of the contract is tainted with illegality."  See Armendariz, 24 Cal. 4th at 125; see also, e.g., Bridge Fund Capital Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1006 (9th Cir. 2010) (considering, under California law, five-paragraph arbitration clause; finding arbitration clause unenforceable where severance of four "offending provisions would have left almost nothing").

Here, no reformation or rewriting is necessary, as severance of the term barring "claims brought in a purported representative capacity on behalf of others" will serve to maintain an otherwise valid agreement, the central purpose of which is to resolve all employment-related claims by arbitration, but only "to the extent permitted by law."  (See Pehle Decl. Ex. A ¶ A); Armendariz, 24 Cal. 4th at 124 (noting "doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme").  The Court thus finds severance of the challenged PAGA provision appropriate and, in its absence, finds the Arbitration Agreement is not substantively unconscionable.

Accordingly, as a finding of unconscionability requires both "a procedural and a substantive element," see Concepcion, 563 U.S. at 340, the Arbitration Agreement is not

17

1    unenforceable on grounds of unconscionability.

2        **4. Class Action Waiver**

3        The Arbitration Agreement provides that "[a]rbitration shall proceed solely on an

4    individual basis without the right for any claims to be arbitrated on a class action basis."

5    (<u>See</u> Pehle Decl. Ex. A ¶ I.)  Kittrell argues such provision is unenforceable.  If so, it

6    would be "invalidate[d]" and Kittrell could pursue his class claims in arbitration.  <u>See</u>

7    <u>Gentry v. Superior Court</u>, 42 Cal. 4th 443, 463 (2007).

8        In <u>Gentry</u>, the California Supreme Court identified the following factors a court

9    must consider when addressing, in a case in which the plaintiff asserts an overtime claim,

10    an argument that a class action waiver in an arbitration agreement is unenforceable:

11    "[1] the modest size of the potential individual recovery, [2] the potential for retaliation

12    against members of the class, [3] the fact that absent members of the class may be ill-

13    informed about their rights, and [4] other real world obstacles to the vindication of class

14    members' right to overtime pay through individual arbitration."  <u>See</u> <u>id.</u> at 463.  To be

15    entitled to a finding that a class action waiver is invalid, a plaintiff must make a "proper

16    factual showing" as to the above-referenced four factors.  <u>See</u> <u>id.</u> at 466.

17        Here, with respect to the first factor, Kittrell's counsel has set forth his valuation of

18    Kittrell's individual claims (<u>see</u> Szmanda Decl. ¶¶ 3-8), which he totals as "approximately

19    $15,522.00" (<u>see</u> <u>id.</u> ¶ 3).  Additionally, counsel states he would not have agreed to

20    represent Kittrell individually "due to the small amount of damages."  (<u>See</u> <u>id.</u> ¶ 11.)  In

21    light of such evidence, the first factor weighs in favor of invaliding the class action waiver.

22    <u>See</u> <u>Gentry</u>, 42 Cal. 4th at 458-59 (citing favorably to Court of Appeal case "reject[ing] the

23    argument that even an award as large of $37,000 would be ample incentive for an

24    individual lawsuit for overtime pay"; finding availability of "[a] class suit" provides "small

25    claimants with a method of obtaining redress for claims which would otherwise be too

26    small to warrant individual litigation").

27        With respect to the second factor, Kittrell offers no direct evidence that putative

28    class members would fear bringing wage and hour claims, but, rather, relies on his

United States District Court
Northern District of California

1   declaration that he "would have been afraid that [he] would have been putting [his] job at

2   risk if [he] complained about [his] rights or filed a lawsuit."  (See Kittrell Decl. ¶ 25.)

3   Although courts have found the second factor is established by evidence that the named

4   plaintiff feared "retaliation," see Garrido v. Air Liquide Industrial U.S., L.P., 241 Cal. App.

5   4th 833, 846 (2015), in those cases the named plaintiff identified some basis for his own

6   fear, from which an inference could be drawn that the putative class members would

7   have a similar fear, see Franco v. Athens Disposal Co., 171 Cal. App. 1277, 1285, 1296

8   (2009) (holding plaintiff satisfied second factor by relying on his declaration that "in his

9   experience, employees who complained about working conditions were 'looked down on'

10  by management and 'often lost their jobs or were treated in ways that forced them to

11  quit'") (alteration omitted); Garrido, 241 Cal. App. 4th at 846 (finding plaintiff satisfied

12  second factor by relying on his declaration that he had "fear of retaliation by [employer]"

13  because it "made its truck drivers frequently feel as if their jobs were in jeopardy").  Here,

14  by contrast, Kittrell fails to identify any basis for his asserted fear.  Under such

15  circumstances, the second factor weighs, at best, only slightly in favor of invaliding the

16  class action waiver.

17          With respect to the third factor, Kittrell again does not rely on any direct evidence

18  of the experiences of the putative class members, in this instance evidence as to what

19  information putative class members lack.  Rather, Kittrell relies on his declaration that he

20  "did not know [his] lunch and rest break rights under California law or that [he] was

21  supposed to be paid wages if [he] did not get all required breaks."  (See Kittrell Decl.

22  ¶ 24.)  As there is no evidence Kittrell was unaware of his right to overtime, his right to be

23  paid at least the minimum wage, and his right to receive sick pay, there is no evidence

24  from which to infer putative class members lack such information.  With respect to meal

25  and rest breaks, USA Debusk has offered evidence that employees are advised of meal

26  and rest policies "at the time of hire," namely, evidence that they are provided with a

27  written policy setting forth "California's rules for taking meal periods and rest breaks" (see

28  Supp. Black Decl. ¶ 8, Ex. E), and that Kittrell was not so advised because USA Debusk

United States District Court
Northern District of California

United States District Court
Northern District of California

1    determined he was "exempt" from California's "meal and rest break rules, by virtue of

2    federal Department of Transportation regulations" (see id. ¶ 8). Given such apparently

3    idiosyncratic situation,[13] the Court finds the third factor does not weigh in favor of

4    invaliding the class action waiver.

5         With respect to the fourth, and last, factor, Kittrell relies on the same showing he

6    offers in support of the first factor, namely, his counsel's declaration that he would not

7    have agreed to represent Kittrell individually "due to the small amount of damages." (see

8    Szmanda ¶ 11), a circumstance appropriately considered in connection with the first

9    factor, see Gentry, 42 Cal. 4th at 459. Kittrell fails, however, to identify some "other real

10   world obstacles to the vindication of class members' right to overtime pay," or another

11   type of pay, if putative class members were to be required to proceed with individual

12   arbitrations. See id. at 463. Indeed, as to "many" of USA Debusk's employees, no such

13   question will arise. In particular, Kittrell has not contested USA Debusk's evidence that

14   "many employees in California over the last five years . . . have declined to sign

15   arbitration agreements with USA Debusk for many different reasons." (See Black Decl.

16   ¶ 5.) Consequently, such individuals, if they so desire, are able to bring employment-

17   related claims in court, either individually or through a class action. Under such

18   circumstances, the Court finds the fourth factor does not weigh in favor of invaliding the

19   class action waiver.

20        Accordingly, two factors weighing against invalidation, one factor weighing in favor

21   of invalidation, and one factor weighing only slightly, if at all, in favor of invalidation, the

22   Court finds Kittrell has failed to show the class action waiver should be invalidated.

## CONCLUSION

23

24        For the reasons stated above, USA Debusk's motion to compel arbitration is

25   hereby GRANTED, and the above-titled action is hereby STAYED pending resolution of

26

27        [13] Kittrell has not argued the putative class consists of improperly classified
     individuals; indeed, he seeks to bring his claims, including meal and rest period claims,

28   on behalf of USA Debusk's "hourly non-exempt employees." (See Compl. ¶¶ 46.A-J.)

1    Kittrell's individual arbitration claims.

2            **IT IS SO ORDERED.**

3

4    Dated: October 31, 2025

5                                                        MAXINE M. CHESNEY
                                                         United States District Judge

United States District Court
Northern District of California